IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN M. EICHSTADT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  06 CV 2535 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Susan Eichstadt filed this action against Jo Anne Barnhart, Commissioner of the Social Security Administration ("SSA"), challenging the denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 416(I). Both parties have moved for summary judgment. For the reasons set forth below, plaintiff's motion is denied, defendant's motion is granted, and the decision denying DIB benefits is affirmed.

## **FACTS**

Procedural History

Plaintiff applied for DIB on December 12, 2003. Plaintiff's "insured status," or eligibility for DIB, had expired on December 31, 1987. The SSA denied plaintiff's application both initially and after a request for reconsideration. Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").

Plaintiff appeared before ALJ Cynthia Bretthauer on September 16, 2005. On October 25, 2005, the ALJ found that plaintiff was not disabled because she retained the ability to perform her past relevant work prior to December 31, 1987. On April 25, 2006, the Appeals

Council denied plaintiff's request for review, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision.

Hearing Testimony and Documentation

At the hearing before the ALJ, plaintiff testified that she suffered from the following conditions both before and after December 31, 1987: temporomandibular joint syndrome ("TMJ"), for which she had jaw surgery; related chronic jaw, facial, and dental pain; vertigo; migraines; insomnia; severe muscle aches, pain, and fatigue; fibromyalgia, which was not diagnosed until 1999; depression and severe anxiety; anemia and menorrhagia; gastroenteritis and irritable bowel syndrome; vertiligo, rosacea, and photosensitivity; borderline and actual hyperthyroidism; severe eye and vision problems, including dry, bulging, and twitching eyes; plantar fascitis, causing foot and heel pain; carpal tunnel pain; back and head pain; and heart palpitations.[1]

Plaintiff submitted numerous medical records concerning her conditions. Because so many years had lapsed between the expiration of plaintiff's insured status and the date on which she filed for benefits, she was unable to obtain many records from the period prior to December 31, 1987. The only records plaintiff produced for the period prior to the termination of her insured status were related to her dental pain and jaw surgery. Plaintiff provided documentation that she saw Drs. Moats, Tropp, Funk, and McGarr for dental work between the years of 1986 and 1989; she also saw Dr. Doerfler, who performed her TMJ surgery in October 1986. Dr. Doerfler's report from October 4, 1986 states that plaintiff suffered from "bilateral

---

[1] Plaintiff also testified that she suffers from rheumatoid arthritis, sciatica, and osteoporosis. It appears from the record, however, that symptoms of these conditions did not present themselves until after December 31, 1987.

internal derangement at temporal mandibular joint with an erosion of the condyl heads and interior dislocation of the meniscus bilaterally with probably chondromalcia adhesions." Plaintiff also saw Dr. Dessner in 1987. Although plaintiff maintains that it was not until she met with Dr. Dessner that she was diagnosed with TMJ, it is apparent from Dr. Doerfler's reports that plaintiff was diagnosed with the condition in 1986.

Aside from plaintiff's dental records, there are no other medical documents from the period before December 31, 1987.[2] Several records from the period after this date, however, reference conditions that may have been in existence prior to the expiration of plaintiff's insured status.[3] Documents from the Lake Forest Hospital Center for Rehabilitation dated July, 2004, note a history of pain for more than 20 years. Two new patient evaluations from this facility, dated July 26, 2004, and September 1, 2004, reference pain dating back to plaintiff's teens and early twenties. Dr. Adamson, a neurosurgeon, conducted an examination of plaintiff on August 22, 2001, in which he noted plaintiff's history of diffuse pain and numbness beginning in the 1980s. Dr. Vora of the Illinois Bone & Joint Institute recorded bilateral heel pain present since plaintiff's childhood.

Plaintiff testified before the ALJ that as of 1987 she lived with her husband and her six-year-old son. She stated that she was able to drive as of 1987 and that she had no medical restrictions on her driver's license. Plaintiff testified that she had past work experience as a pre-

---

[2]The record contains documentation that plaintiff received four counseling sessions from Willow Creek Counseling Center at Willow Creek Community Church in March and April of 1986. The records do not indicate the reason for these sessions, and plaintiff does not mention the sessions in her complaint or motion for summary judgment.

[3]The court notes that these references to conditions existing prior to the termination of plaintiff's insured status were based on information from plaintiff herself.

school child care worker, nurse's aide, waitress, and administrative assistant. She also stated that she left her position as a child care worker because of severe dental and facial pain. Plaintiff was unsure whether she could have performed the work required of an administrative assistant or waitress after her TMJ surgery.[4] The ALJ questioned plaintiff about a letter she wrote to Dr. Moats regarding her TMJ and related pain on May 12, 1987. In this letter plaintiff stated that she needed to reflect on her medical treatment "[n]ow that [she was] feeling relief." Plaintiff also stated that she was still in need of dentistry, but she listed only a tooth replacement and future cleanings as examples. Plaintiff made no mention in the letter of continuing pain.

Lee Knutson, a vocational expert, also testified at plaintiff's hearing. Mr. Knutson classified plaintiff's past work as "semi-skilled" and ranging in physical difficulty from sedentary to medium. He testified that despite plaintiff's medical conditions, she retained sufficient functional capacity to return to any of these positions as previously performed.

ALJ's Findings

Based on the testimony of plaintiff and the vocational expert, the ALJ found that plaintiff did not qualify for DIB. Specifically, the ALJ found that although plaintiff's TMJ was a "severe" impairment, plaintiff maintained sufficient residual functional capacity for light-

---

[4]The ALJ interpreted plaintiff's statement regarding her ability to do the work of an administrative assistant to mean that she left her job in 1986 because of conflicting schedules, rather than physical pain. It is apparent from the record, however, that plaintiff did not understand the ALJ's line of questioning. Plaintiff testified that she left her position as an administrative assistant because of scheduling conflicts with her husband. Plaintiff's last position, though, was as a child care worker, which she maintains she left because of facial and dental pain. The ALJ relied heavily on plaintiff's statement that she left her job for scheduling reasons, rather than medical complications, in making her decision as to plaintiff's benefits eligibility. Plaintiff's counsel did not, however, raise this issue in the motion for summary judgment, and the court will not consider it in making its ruling.

exertion work. Further, plaintiff's past relevant work did not require the performance of any activities precluded by her residual functional capacity as of the date of the hearing. Based on these determinations, the ALJ found that plaintiff did not have a "disability" as defined by the Social Security Act at any point before December 31, 1987, the last date on which plaintiff was eligible for DIB. The ALJ also found plaintiff's allegations regarding her medical conditions not totally credible.

## **DISCUSSION**

Plaintiff contends that the ALJ's decision was improper because the ALJ: 1) failed to follow the requirements of Social Security Ruling ("SSR") 83-20 in not determining an onset date of disability; 2) failed to explain the reasons she found plaintiff not credible as required by SSR 96-7p; 3) did not make every reasonable effort to obtain plaintiff's medical records and seek additional evidence as required by 20 CFR § 404.1512; and 4) failed to pose hypothetical questions to the vocational expert that fully set forth plaintiff's medical impairments to the extent supported by medical evidence in the record.

Standard of Review

The Commissioner's factual findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

This standard of review recognizes that the ALJ is entrusted to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. Perales, 402 U.S. at 399-400. The reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the agency to decide whether a claimant is or is not disabled. Diaz, 55 F.3d at 305; Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). If a court determines that the ALJ's decision is not supported by substantial evidence and should be reversed, a remand for further proceedings, not an award of benefits, is appropriate unless all factual issues have been resolved and the court can conclude, with some certainty, that the plaintiff is totally disabled. See Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993) (the determination to award of deny benefits "is essentially a factual finding best left for the [Commissioner] to address in the first instance, unless the record can yield but one supportable conclusion.").

SSR 93-20: Onset Date

Plaintiff claims that the ALJ violated SSR 83-20 by not determining an onset date of disability or specifying that plaintiff was not disabled. Plaintiff's reliance on SSR 83-20 is misguided. The ALJ did, in fact, specify in finding 9 that "[t]he claimant was not under a 'disability' as defined in the Social Security Act at any time through December 31,1987 (20 CFR § 404.1520(f))," the date at which her insured status expired.

SSR 83-20 addresses situations in which an ALJ finds that an individual is disabled as of the date he or she applied for DIB and must determine the onset date of the disability, i.e., whether the disability arose at an earlier date. Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004). SSR 83-20, however, states that an individual applying for DIB under Title II cannot be

6

found disabled under the Act unless "insured status is also met at a time when the evidence establishes the presence of a disabling condition." Because the ALJ did found that plaintiff was not disabled before the expiration of her insured status, plaintiff does not qualify as "disabled" under the SSA, and there is therefore no need for the ALJ to determine an onset date. Scheck, 357 F.3d at 701. There is also no need for the ALJ to consult a medical expert in determining the onset date. In short, SSR 83-20 does not apply to the instant case.

SSR 96-7p: Credibility of Plaintiff

Plaintiff argues that the ALJ failed to abide by SSR 96-7p because she failed to articulate the reasoning behind her determination in finding 5 that "the claimant's allegations are not totally credible." SSR 96-7p states that "when evaluating the credibility of an individual's statement the adjudicator must consider the entire case record and give specific reasons to the weight given to the individual's statements."

In making an assessment of credibility, an ALJ must explain how a claimant's allegations are inconsistent with the medical record. Johnans-en v. Barnhart, 314 F.3d 283, 288 (7th Cir. 2002). A court may not reverse an ALJ's credibility finding merely because the ALJ did not "specify which statements were incredible" or "provide an evidentiary basis for the credibility finding." Jens v. Barnhart, 347 F.3d 209, 213-14 (7th Cir. 2003). The court should uphold an ALJ's credibility finding so long as it is not "patently wrong." Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000). Because the ALJ's determination in the instant case is not patently wrong, the court may not overturn the decision.

Further, the ALJ did make an evaluation of plaintiff's credibility in her decision. While the ALJ in the instant case did not outline her reasoning as to plaintiff's credibility in the

7

findings themselves, she did discount plaintiff's credibility throughout the text of her decision. Specifically, the ALJ noted that: 1) despite plaintiff's claims that she was prescribed medication for her dental and jaw pain, she indicated in a letter that she was "'feeling relief'" and "on the road to recovery" from her TMJ; 2) there was no evidence in the record to support plaintiff's contention that she lost the ability to speak at any time during her TMJ treatment; 3) plaintiff was unsure as to whether she was capable of performing her job in 1987; 4) many of plaintiff's medical records were not available; and 5) although plaintiff stated that she suffered from depression, she could not recall whether she was taking any medication for depression during 1986 and 1987. Such evaluations are sufficient consideration of plaintiff's credibility.

Obligation to Obtain Medical Records

Plaintiff claims that the ALJ did not follow the requirements of 20 C.F.R. § 404.1512 because she failed to "make every reasonable effort" to secure all medical records from plaintiff's medical sources. Plaintiff also contends that the ALJ failed to send her for a consultative examination as required by the regulations.

As a preliminary matter, as noted by defendant, the burden is on plaintiff to provide medical documentation of her disability. 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing you have an impairment(s) and how severe it is during the time you say you are disabled."). Plaintiff herself notes that "[i]t was difficult for Claimant to assemble medical records for periods some 18 years prior to the date of hearing as the medical providers had destroyed records," and that "TMJ is the only condition for which medical treatment is well documented before December 31, 1987." The administrative record also demonstrates that the SSA sent numerous requests for documents to the doctors listed by plaintiff. The SSA also

8

asked plaintiff to contact her medical providers directly. The court therefore finds that the ALJ met her burden in making every reasonable effort to secure plaintiff's medical records.

Plaintiff also maintains that the ALJ had an obligation to search for alternative sources of medical evidence, including a consultative examination. This requirement, however, applies only when the ALJ must determine an onset date under SSR 83-20. As discussed above, SSR 83-20 does not apply in the instant case. For that reason, the ALJ was under no obligation to seek additional medical evidence to determine plaintiff's onset date.

Testimony of Vocational Expert

Plaintiff argues that the ALJ improperly relied on the testimony of the vocational expert in reaching a decision concerning plaintiff's eligibility for benefits. To determine whether a plaintiff is eligible for benefits, the ALJ must conduct a five-step inquiry under 20 CFR § 404.1520:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA, see 20 CFR § 404, Subpt. P, App. 1;
> (4) whether the claimant can perform her past work; and
> (5) whether the claimant is capable of performing work in the national economy.

If a plaintiff "satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. If a disability determination reaches step five, the ALJ must discharge Commissioner's burden of proof either by applying the Medical Vocational Guidelines (the 'grid') or through the use of a vocational expert." Dyson v. Massanari, 149 F.

Supp. 2d 1018, 1023-24 (N.D. Ill. 2001), citing <u>Herron v. Shalala</u>, 19 F.3d 329, 336-37 (7th Cir. 1994).

In the instant case, the ALJ reached step four in her analysis, at which point she concluded that plaintiff was capable of performing her past work. Because the ALJ did not reach step 5, the burden of proof at step 4 was still on the plaintiff. The ALJ was therefore not required to consider the testimony of the vocational expert in making her decision concerning plaintiff's eligibility for benefits. Further, although the ALJ did consider the vocational expert's testimony in evaluating the exertion level of plaintiff's past work, she did so only in conjunction with other criteria, including the letter plaintiff wrote to Dr. Moats. The ALJ therefore did not err in relying on the vocational expert's testimony in reaching her decision.

## **CONCLUSION**

For the reasons set forth above, the court denies plaintiff's motion for summary judgment, grants defendant's motion for summary judgment, and affirms the decision of the Commissioner denying disability benefits.

**ENTERED: November 13, 2006**

**Robert W. Gettleman
United States District Judge**